**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. _____

RYAN DUVALL, and
DENISE CLARK, as Personal Representative of Ryan Duvall,

    Plaintiff(s),

v.

CoreCivic of Tennessee, LLC; and
CoreCivic, Inc., A Maryland Corporation

    Defendant(s).

---

**COMPLAINT AND JURY DEMAND**

---

    **COMES NOW the Plaintiff, Denise Clark as personal representative for Ryan Duvall (Deceased), by and through her attorney, Selvoy Fillerup, complains against defendant, CoreCivic of Tennessee, LLC, and CoreCivic, Inc. for damages for the wrongful death of Ryan Duvall and in support states and alleges as follows:**

<u>JURISDICTION AND VENUE</u>

1. Plaintiff, Denise Clark, (hereinafter "Plaintiff") is an individual who is currently in the state of Colorado.

2. Ryan Duval (hereinafter the "Decedent") was an individual who resided in the state of Colorado, and was at all relevant times herein, a resident of the state of Colorado, City and County of Denver (3955 Ulster St, Denver, CO 80207).

3. Defendant CoreCivic of Tennessee, LLC is a Tennessee Limited Liability Company headquartered at 5501 Virginia Way, Brentwood, TN 37027, and operates a criminal justice residential transitional facility at 3955 Ulster St, Denver, CO 80207 within the county of Denver and within the State of Colorado (hereinafter the "Ulster Facility").

4. Defendant CoreCivic, Inc. is a Maryland Corporation headquartered at 5501 Virginia Way, Brentwood, TN 37027, and operates a criminal justice residential transitional facility at 3955 Ulster St, Denver, CO 80207 within the county of Denver and within the State of Colorado (hereinafter the "Ulster Facility").

5. Plaintiff sent notice of intent to sue letters within the prescribed 180 days subsequent to Duvall's death.

6. Defendant is acting as a representative of the state of Colorado.

7. All of the acts and/or failures to act were within the scope of negligence or were willful and wanton.

## FACTS

8. Plaintiff is the genetic mother of the Decedent and is the Decedent's rightful heir under CRS 15-11-103. The Decedent was not legally married at the time of his death, did not have any descendants, and did not designate a beneficiary as defined in CRS 15-22.

9. Decedent was admitted as a resident at the Ulster Facility on or about January or February, 2018.

10. After successfully completing his program at the Ulster Facility, the Decedent was scheduled to be released on or about Monday, November 12, 2018.

11. On or about November 10, 2018, at 8:33 am, the Decedent sent his sister Evelyn Duvall a message that he needed to go to the Emergency Room, and that he was going to request permission to go from the Ulster Facility staff.

12. On or about November 10, 2018, the Decedent informed the Ulster Facility staff that he was feeling severely ill and needed to be taken to a hospital, or at the very least examined by medical staff members.

13. Despite the Decedent's pleas for medical attention, the Ulster Facility staff denied his request to go to the hospital and ignored the Decedent's calls for medical attention.

14. The Decedent later informed Evelynn Duvall that the staff had refused to take him to the Emergency Room or to even give him a cursory examination. Instead, staff simply informed him that "he needed to go to work."

15. After reporting these events to his Evelynn Duvall, the Decedent again tried to request to go to the Emergency Room a second time. Again, the staff refused. The Decedent then called Evelyn Duvall at 10:36 am and told her the staff were denying his request for medical attention and would not let him leave the Ulster Facility to see a doctor or go to the hospital.

16. Evelyn Duvall called the Decedent back 15 minutes later and was unable to reach him.

17. Merely hours later, the family was notified the Decedent had passed away approximately 11:00 AM on November 10, 2018.

18. The autopsy report indicated that Decedent died of natural causes.
19. The Decedent toxicology report came back negative for any drugs.
20. The Ulster Facility offered to pay for the food at Ryan Duvall's Funeral.
21. Plaintiff paid for the cost of the Decedent's funeral expenses totaling approximately $4.500.
22. As a result of her debilitating grief, on top of having to make funeral arrangements, Plaintiff was unable to provide for either her family or herself due to missed wages and suffered economic harm.
23. In addition, Plaintiff relied on the Decedent for financial assistance prior to the Decedent's death as a result of Plaintiff's health issues. As a result of the Decedent's death, Plaintiff suffered additional economic harm.
24. Plaintiff has suffered an extreme amount of grief, loss of companionship, pain and suffering, and emotional stress as a result of the Decedent's death.
25. Defendant had a duty of care to protect the life and wellbeing of the Decedent while the Decedent was in Defendant's care.
26. Per Defendant's own policy, Defendant's had a duty to comply with the Decedent's request to go to the hospital.
27. Defendant had a duty of care to ensure all Ulster Facility staff were adequately trained in Defendant's own policies and adequately trained to provide for the health and safety of Defendant's residents.
28. Defendant failed to train its staff on how to provide for the health and safety of Defendant's residents.

29. Defendant's negligence and failure to uphold its duty of care is the actual and proximate cause of Decedent's death.
30. But for Defendant's refusal to provide the Defendant care, the Decedent would still be alive today and would be able to continue to provide for himself and for the Plaintiff and be an active member of society.

## CLAIMS

## FEDERAL CLAIM 1 - SECTION 1983 VIOLATION – NEGLIGENCE

31. Plaintiff incorporates by reference the allegations above as if repeated here.
32. On November10, 2018, Defendants ignored Decedent's repeated requests for medical attention.
33. Defendant owed a duty to Decedent to protect his life while in its charge.
34. Defendant owed a duty to Decedent to exercise reasonable care when overseeing his medical needs while in their charge.
35. Defendant breached those duties and negligently permitted Decedent to die while in its charge.
36. As a result of Defendant's negligence, Decedent suffered injuries and damages which ultimately resulted in the loss of his life.
37. As a result of Defendants' negligent administration of the duties, Plaintiff suffered medical and funeral expenses and loss of income.

38. Defendant's actions or inactions violated Decedent's equal protection rights under the United States Constitution.
39. At all times, Defendant was acting under the color of state law.
40. Defendant's acts were willful and wanton.

## FEDERAL CLAIM 2 - SECTION 1983 VIOLATION – WRONGFUL DEATH

41. Plaintiff incorporates by reference the allegations above as if repeated here.
42. On November 10, 2018, Defendant refused to provide Decedent with medical attention when requested.
43. Decedent was in Defendant's custody when he died as a result of Defendant's actions or inaction.
44. As a result of his death, Decedent incurred funeral expenses and are claimed together with all damages allowed under the law.
45. Decedent's death was caused by Defendants' actions or inactions.
46. Defendant's actions or inactions violated Decedent's equal protection rights under the United States Constitution.
47. At all times, Defendant was acting under color of state law.
48. Defendant's actions were willful and wanton.

## STATE CLAIM 1 – WRONGFUL DEATH - CRS 13-21-101 *et. Seq*

49. Plaintiff incorporates the allegations above as if repeated here.

6

50. On November 10, 2018, Defendant operated the Ulster halfway house, the place where Decedent resided and ultimately died.
51. Upon information and belief, Defendant is the operator of the halfway house where Decedent resided and is, therefore, liable for the negligent actions or inactions of its staff.
52. As a result of Defendant's negligence, Decedent suffered injuries and damages as more fully set forth above and claims for same.
53. Though Defendant has caused plaintiff irreparable harm by causing the death of the Decedent, Plaintiff has suffered immense grief, loss of companionship, pain and suffering, and emotional stress and is entitled to noneconomic damages in the amount of $250,000.
54. As a result of Defendant's negligence in causing the Decedent's death, Plaintiff has suffered economic damages for loss of financial support, lost wages, and the cost of the Decedent's funeral expenses in the amount of $4,500.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for the following relief:

A. Economic damages for loss of financial support and lost wages in the amount of $3,000,000.00.
B. Economic damages for funeral costs in the amount of $4,500.

C. Noneconomic damages for grief, loss of companionship, pain and suffering, and emotional stress in the amount of $250,000 and adjusted for inflation as set forth in CRS 13-21-203.7.

D. In the alternative to its prayer for noneconomic damages set forth above, a solatium amount in the amount of $50,000 and adjusted for inflation as set forth in CRS 13-21-203.7.

E. Punitive damages as deemed appropriate by the court.

F. For such other and further relief as this court deems just and equitable.

Dated this November 10, 2020.

/s/ Selvoy Fillerup
*Selvoy Fillerup*
Crestone Law Group, LLC
2500 S. York Street, #103
Denver, CO 80210
Telephone: (720) 281-4668
E-mail: selvoy@crestonelaw.com
Attorney for Denise Clark